kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06-40151-JAR** |
| | ) | |
| **F. JEFFREY MILLER,** | ) | |
| **STEPHEN W. VANATTA,** | ) | |
| **HALLIE IRVIN, AND** | ) | |
| **SANDRA JO HARRIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

A Second Superseding Indictment ("the Indictment") (Doc. 129) filed on June 13, 2007, charges the defendants as follows: Count 1 charges defendants F. Jeffrey Miller, Stephen Vanatta, Hallie Irvin, and Sandra Jo Harris with conspiracy to commit bank fraud, money laundering, disobeying a court order, obstruction of an investigation, and witness intimidation. The Indictment details a number of overt acts committed in furtherance of the conspiracy and expressly states that the charges in Counts 2-12 of the Indictment are overt acts of the conspiracy. In Counts 2 and 3, all four defendants are charged with bank fraud. In Counts 4 and 5 all defendants are charged with money laundering. In Count 6 defendants are charged with destruction of records in a federal investigation. In Count 7 defendants are charged with harassing witnesses in another pending federal criminal case. In Count 8, defendants Miller, Vanatta, and Irvin are charged with corruptly influencing and attempting to influence a witness. In Counts 9, 10, and 11 all four defendants are charged with criminal contempt; and in Count 12, defendants Miller, Vanatta, and Irvin are charged with criminal contempt. The Indictment also

includes a "Forfeiture Notice and Allegation" against all four defendants.

The Court heard a number of motions at a hearing on October 17, 2007, ruled on some and took the rest under advisement.[1]  Having fully considered all submissions, the Court now rules on the following motions:  Miller (Doc. 137) and Vanatta (Doc.131) motions to sever defendant Harris; Miller motion (Doc. 141) to sever Counts 7 and 9-12; Harris motion (Doc. 140) to dismiss Counts 2, 4, and 7; Miller (Docs. 136, 173) Vanatta (Docs. 132, 175) and Harris (Doc. 139)[2] motions for bill of particulars; Vanatta (Doc. 133) motion for discovery of existence and admissibility of co-conspirator statements; Miller (Doc. 29) and Vanatta (Doc. 95) motions to change venue or for intradistrict transfer; and Miller limine motions concerning certain background information (Doc. 135) and wealth (Doc. 138).

**Motions to Sever Defendants  (Docs. 131, 137)**

Defendant Miller moves to sever his trial from the trial of codefendants Vanatta, Irvin, and Harris.  Defendant Vanatta moves to sever his trial from the trial of codefendant Harris.  Both motions for severance are denied.  "There is a preference in the federal system for joint trials of defendants who are indicted together"[3] because joint trials "promote efficiency and

---

[1]The Court granted: Vanatta's motion for extension of time (Doc. 130); Vanatta's motion to join in Miller's motions (Doc. 143); Vanatta's motion to join in Miller's motion to continue (Doc. 155); Vanatta's motion for extension (Doc. 176); Irvin's motion to join in Miller's motions (Doc. 146); and Irvin's motion to join in Miller's motion to continue (Doc. 156).  The Court found moot Vanatta's motion to discover promises to witnesses (Doc. 142) and Vanatta's motion for production and inspection of grand jury transcripts and minutes (Doc. 134). In text entries on October 17, 2007, the Court granted defendant Vanatta's motion (Doc. 143) to join in the motions of Miller, and defendant Irvin's motion (Doc. 146) to join in the motions of Miller.  Defendant Vanatta has also filed a motion (Doc. 144) for a detention hearing, which the Court has found moot, considering a hearing on this issue has been continued by defendant.  Defendant Vanatta has also filed a motion for reconsideration (Doc. 177) of the court's prior detention order.

[2]Defendant Harris's motion is styled a motion for bill of particulars on the First Superseding Indictment. There has now been a Second Superseding Indictment filed.  Rather than treat defendant Harris's motion as moot, the Court will apply defendant Harris's motion the Second Superseding Indictment.

[3]*Zafiro v. United States*, 506 U.S. 534, 537 (1993).

'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"[4] But, under Fed. R. Crim. P. 14(a), if the defendants' joinder in the indictment appears to prejudice a defendant, the court may sever the defendants' trial or provide any other relief that justice requires. The Supreme Court "believe[s] that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[5] "'In the context of conspiracy, severance will rarely, if ever, be required.'"[6] In a conspiracy case, joint trials "'reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague' and provide 'the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'"[7] The defendant bears a heavy burden of showing prejudice.[8] The "determination of the risk of prejudice and any remedy that may be necessary [is committed] to the sound discretion" of the court.[9]

Defendant Miller contends that severance is proper because he and his codefendant Harris have antagonistic defenses. In determining whether severance is proper on the grounds of antagonistic defenses, a trial court should first consider whether the defenses presented are so

---

[4]*Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).

[5]*Id.* at 539.

[6]*United States v. Ramos*, 839 F. Supp. 781, 785 (D. Kan. 1993) (quoting *United States v. Searing*, 984 F.2d 960, 965 (8th Cir. 1993)).

[7]*Id.* (quoting *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)).

[8]*United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007).

[9]*Zafiro,* 506 U.S. at 541 (citing Fed. R. Crim. P. 14).

3

antagonistic as to be mutually exclusive.[10]  Second, as "mutually antagonistic defenses are not prejudicial per se," the defendant must then show that a serious trial right will be compromised.[11]  Last, if the prior considerations are met, the court must weigh the prejudice with considerations of judicial economy and expeditious administration of justice.[12]

According to Miller, he and Harris will have antagonistic defenses because the jury will have to choose between believing that Miller did not know about Harris's illegal actions or believing that Harris acted with Miller's authority.  Miller is mistaken.  A defense is antagonistic if "'the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'"[13]  In other words, the guilt of one defendant would establish the innocence of the other.[14]  Here, Miller does not make that showing because Harris's contentions, though they show that Miller was involved in the conspiracy, also show that Harris was involved in the conspiracy.  Harris, if she were to testify in that manner, would not be putting up a defense, but rather incriminating herself and Miller.

Furthermore, in this Circuit, it has been held that "one defendant's attempt to cast blame on the other is not in itself a sufficient reason to require separate trials."[15]  Indeed, defendants are not entitled to a severance simply because they have a better chance of acquittal with separate

---

[10]*United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007).

[11]*Id.* (quoting *Zafiro*, 506 U.S. at 539).

[12]*Id.* (citing *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989)).

[13]*Id.* (quoting *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994)).

[14]*Id.* (citing *Peveto*, 881 F.2d at 857)).

[15]*Carter v. Gibson*, 27 F. App'x 934, 948 (10th Cir. 2001); *United States v. McClure*, 734 F.2d 484, 488 (10th Cir. 1984).

4

trials.[16]  Like other courts, this Court sees no reason "why relevant evidence and competent testimony would be prejudicial merely because the witness is also a codefendant . . . .  A [d]efendant normally would not be entitled to exclude the testimony of a former codefendant if" this Court were to sever their trial.[17]

Even if the Court viewed Miller and Harris's defenses as antagonistic, Miller has not suggested that a serious trial right would be implicated or that a limiting instruction cannot cure any defect.  To establish that a serious trial right is affected, Miller must show that the jury will be unable to make a reliable judgment about guilt or innocence.[18]  Miller makes no more than a conclusory statement that if severance is not granted, "the jury will not be able to make a reliable judgment as to [his] guilt or innocence."  This is not enough.  As the burden is on Miller to demonstrate that a specific trial right is prejudiced, simply stating so does not make it so.

Both Miller and Vanatta argue that denying severance will violate their Sixth Amendment right to confront their accusers.  Miller seeks severance from all three of his codefendants; Vanatta seeks severance from codefendant Harris.  Both argue that if the government offers a codefendant's statement at trial, and such codefendant asserts his Fifth Amendment right, there will be no ability to confront the codefendant on his statement.  But this *Bruton* argument is without merit.  In *Bruton v. United States*,[19] the Supreme Court held that the admission of a non-testifying codefendant's testimony that implicates the defendant at their joint

---

[16]*United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007).

[17]*Zafiro v. United States*, 506 U.S. 534, 540 (1993).

[18]*Pursley*, 474 F.3d at 766.

[19]391 U.S. 123 (1968).

trial violates the defendant's Sixth Amendment right of confrontation.[20]  *Bruton's* progeny,

however, has been limited to cases where the testimony of the codefendant is directly

inculpatory, not testimony which is inferentially inculpatory when coupled with other evidence

at trial.[21]  In fact, unless the non-testifying codefendant's testimony is "clearly inculpatory" and

is vital to the government's case, *Bruton* does not apply.[22]

Both Miller and Vanatta's motions are speculative and conclusory.  They hypothesize

that a codefendant or codefendants will testify.  Their argument is dependent on two conditions

precedent—a codefendant's statement is offered, and that codefendant does not testify at trial.

Neither defendant can show that these conditions will occur, nor can they specifically point to

testimony that is directly inculpatory, or vital to the government's case.

Miller and Vanatta also argue that without severance, they will be prejudiced by the

jury's inability to compartmentalize the evidence against them and make a fair, individualized

assessment of the guilt of each defendant.  Vanatta characterizes this as the risk that evidence

against his codefendants will improperly "rub off" on him and that  there "may be statements

admitted into evidence by Harris regarding codefendants that are incompetent as to Vanatta."

But neither Miller nor Vanatta provide any specific detail about how their Sixth

Amendment right will be compromised through prejudicial spill-over.  Neither has met his

burden of showing that a serious trial right will be compromised or that the jury will be

prevented from making reliable determinations of guilt.  An allegation that a defendant would

---

[20]*United States v. Nash*, 482 F.3d 1209, 1218 (10th Cir. 2007) (citing *Bruton*, 391 U.S. at 137).

[21]*Id.* (citing *Gray v. Maryland*, 523 U.S. 185, 195 (1998)).

[22]*United States v. Espinosa*, 771 F.2d 1382, 1399 (10th Cir. 1985).

have a better chance of acquittal or that spill-over is damaging to his case is not sufficient to warrant a severance.[23]  Furthermore, neither defendant has shown that an instruction from the Court could not cure any defect.[24]  And as jurors are presumed to follow the court's instructions,[25] a limiting instruction in this case will surely suffice.

Vanatta further contends that if Harris can provide evidence that exculpates Vanatta, he will lose the benefit of that important testimony if Harris chooses not to testify at trial in their joint trial.  Where a defendant claims that separate trials are required because a codefendant will provide exculpatory evidence, courts consider:

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration; 7) the timeliness of the motion.[26]

Other than merely reciting the law, Vanatta has not made the required showing as to any factor. He has not shown, among other things, that Harris's testimony would be exculpatory as to him, nor that Harris would likely testify if the trial was severed.

**Motion to Sever Counts 7 and 9-12 (Doc. 141)**

Defendant Miller also moves for severance of Counts 7, 9, 10, 11, and 12.  This motion is denied.  Joinder of counts is appropriate under Federal Rule of Criminal Procedure 8(a) "if the

---

[23]*United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005).

[24]*Zafiro v. United States*, 506 U.S. 534, 539 (1993) (explaining that limiting instructions will often suffice to cure any risk of prejudice).

[25]*Id.* at 540.

[26]*United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984) (citations omitted).

offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8(a) refers to joinder of counts when there is one defendant.[27] Where there are multiple defendants, as in this case, the standard in Rule 8(b) applies.[28] Rule 8(b) provides that an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The policy concern is that the "[r]ules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses."[29] This is so because "[w]hen similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses."[30] Therefore, "multiple defendants may be charged with and tried for multiple offenses only if . . . the charged acts are part of a 'series of acts or transactions constituting . . . offenses.'"[31]

In Count 7, all four defendants are charged with harassment of Rick and Ginger Hayes, who are witnesses in a separate criminal case in this court, Case No. 06-40068, in which Defendant Miller and eight other defendants (none of which is a defendant in this case) are

---

[27]*See* Fed. R. Crim. P. 8(a) ("The indictment . . . may charge a *defendant* . . . ."); *see also United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988).

[28]*Turoff*, 853 F.2d at 1043.

[29]*Id.* (citing *Cupo v. United States*, 359 F.2d 990, 993 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 928, 1013 (1967)).

[30]*Cupo*, 359 F.2d at 993.

[31]*Turoff*, 853 F.2d at 1043 (quoting Fed. R. Crim. P. 8(b)); *see also United States v. Kiister*, No. 97-40061-01/02-SAC, 1997 WL 823571, at *2 (D. Kan. Nov. 25, 1997).

charged with conspiracy, bank fraud, money laundering, and criminal forfeiture.  In Counts 9, 10

11, and 12, defendants Miller, Vanatta, and Irvin are charged with criminal contempt for

disobeying the June 27, 2006 Order Setting Conditions of Release of defendant Jeffrey Miller in

Case No. 06-40068, by together committing: bank fraud on July 31, 2006; money laundering on

August 1, 2006; destruction of subpoenaed records on August 2, 2006; and attempting to

influence a witness in November 2006.  Defendant Harris is charged in Counts 9, 10, and 11, but

is not charged in Count 12, because according to the Indictment, Harris had withdrawn from the

conspiracy before the attempt to influence a witness in November 2006.

The government maintains that these charges are properly joined because the charges are

part of the same series of acts constituting the offenses charged.  Relying on *United States v.*

*Sarkisian*,[32] the government notes that there is a "greater 'logical relationship' between the

occurrences" in this case.[33]  The government argues that Counts 9, 10, and 11 are properly joined

because the alleged bank fraud, money laundering, and destruction of records occurred while

defendant Miller was under indictment for bank fraud and real estate fraud in Case No. 06-

40068, the same scheme he allegedly participated in, in Case No. 06-40068.  The government

also contends that the harassment of the witness charged in Count 12, was not a separate act, but

one aimed at continuing and possibly evading capture for the alleged conspiracy in Case No. 06-

40068 and the conspiracy charged in Count 1 of this Indictment.

Miller acknowledges that *Sarkisian* imputes a widely liberal standard to joinder, but that

the government has conjured a relationship between the charges that is too tenuous.  Miller,

---

[32]197 F.3d 966 (9th Cir. 1999).

[33]*Id.* at 976.

however, does not suggest a different standard nor cite to any cases for this Court to consider; moreover, the standard promulgated in *Sarkisian* is the standard relied on by most other courts.[34] Even so, most courts have concluded that separate and distinct conspiracies do not form the logical relationship required.[35]  In *United States v. Labrunerie*,[36] the court reasoned that the conspiracies charged were distinct even though they were both for bribery and involved the same defendants.[37]  The court concluded that the conspiracies, to be charged together, must "be tied together into one common plan or scheme."[38]  On the other hand, where the acts are part of a single conspiracy or further a single conspiracy, as in this case, those acts form that logical connection and may correctly be joined.

In fifteen numbered  paragraphs outlining the alleged conspiracy and scheme, the Indictment explains how the charged acts in this case constitute both a new conspiracy to engage in the same types of crimes charged in Case No. 06-40068, as well as a continuation of the conspiracy in Case No. 06-40068, through witness intimidation, destruction of records, bank fraud and money laundering done with the goal of evading prosecution for the conspiracy charged in Case No. 06-40068.   As the Indictment in this case explains, Miller and eight other individuals (none of whom is a defendant in this case), who were associated with Miller in

---

[34]*See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) (applying the logical relationship test); *United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996) (reasoning that joinder of distinct conspiracies is not proper and rejecting joinder based on identity of participants or common plan); *United States v. Labrunerie*, 900 F. Supp. 1174, 1177 (W.D. Mo. 1995) (noting that there must be a logical relationship between the acts of transactions).

[35]*See supra* note 34.

[36]900 F. Supp. 1174 (W.D. 1995).

[37]*Labrunerie*, 900 F. Supp. at 1179.

[38]*Id.*; *see also Kouzmine*, 921 F. Supp. at 1133.

residential real estate construction and sales, were indicted on May 17, 2006, in Case No. 06-40068 for conspiracy, bank fraud, money laundering, and criminal forfeiture arising out of a number of alleged acts that are often referred to with the generic description of mortgage fraud. In Case No. 06-40068, Miller was released on bond with a number of conditions, including a condition that if he continued operating his real estate and construction business, he do so under the terms of a Monitoring Agreement, which provided for monitoring of business transactions by an independent accountant.

The Indictment in this case goes on to allege that despite signing a bond with this condition, Miller formed a new conspiracy with Vanatta, Irvin, and others to continue to engage in criminal activity in connection with Miller's business.  It is that new conspiracy that is charged in Count 1 of the Indictment in the instant case.  Meanwhile, federal agents were conducting a continuing investigation into the business activities of Miller.  The Indictment in this case alleges that the new conspiracy Miller formed with Vanatta, Irvin, and others involved, among other things, obstructing the ongoing investigation of Miller's business by destroying records and attempting to influence witnesses, as well as obstructing the prosecution of the conspiracy charged in Case. No. 06-40068..

Thus, in a nutshell, the government argues that although there were two conspiracies, one involving Miller and eight others as charged in Case No. 06-40068, and a second conspiracy involving Miller and the other defendants in this case, the conspiracies were logically connected. In essence, the alleged conspiracy in this case was both a conspiracy to engage in mortgage fraud, as well as a conspiracy to obstruct the prosecution of the mortgaged fraud conspiracy charged in Case No. 06-40068, and the investigation of the new conspiracy charged in this case.

11

Thus, this Court must decide whether there is a logical connection between Counts 1-6 and 8, and Counts 7 and 9-12.  There is a logical connection between Counts 1-5 and Counts 9-11.  Counts 1-5 charge conspiracy, bank fraud, and money laundering, based on the alleged ongoing criminal activity by Miller and the codefendants in this case, who allegedly formed a new conspiracy after Miller was indicted in Case No. 06-40068 to continue conducting Miller's real estate and construction business through criminal acts.  Counts 9-11 are based on this same conduct, bank fraud and money laundering, but merely charge that this same conduct also constituted criminal contempt in that Miller violated the court's order for conditions of release in Case No. 06-40068, and that the codefendants aided and abetted Miller's criminal contempt.  Similarly, Count 12 is logically connected to Count 8, for Count 8 charges the defendants with obstructing the investigation into the activity underlying Counts 1-5 and 9-11; and Count 12 charges that this obstruction of investigation charged in Count 8 was also criminal contempt, as conduct violating the order setting Miller's conditions of release in Case No. 06-40068.  To summarize, Counts 1-5 and 9-11 charge crimes, Counts 6, 8, and 12 charge conduct designed to conceal the activity or to obstruct the investigation of the conduct charged in Counts 1-5 and 9-11.

Count 7 does not bear quite as direct a connection as the other counts.  Count 7 charges the defendants with harassment of witnesses to the first conspiracy.  Nothing indicates that these witnesses are also potential witnesses in the second conspiracy case.  Nothing indicates that harassment of these witnesses constitutes conduct related to criminal activity in the second conspiracy.  Nothing indicates that harassment of these witnesses was designed to obstruct investigation into the second conspiracy.  But there is a sufficient connection between Count 7

12

and the other counts to join Count 7 with the other Counts in this Indictment.

Counts 9-12 charge criminal contempt for conduct in furtherance of the second conspiracy, because such conduct also violated Miller's condition of release in Case No. 06-40068 that he not commit another crime while on release.  Similarly, in Count 7, the defendants are charged with harassing witnesses in the first conspiracy.  This harassment is criminal conduct that would violate the terms of Miller's conditions of release.  Although the Indictment does not charge criminal contempt based on the conduct in Count 7, the alleged harassment occurred in June 2006, after Miller was under indictment in Case No. 06-40068 and thus is conduct quite similar to that charged in Counts 9-12—it is criminal conduct by Miller and the new conspirators at a time when Miller was under indictment for the first conspiracy.  And although this conduct in Count 7 is neither an overt act in furtherance of the second conspiracy, nor conduct designed to obstruct the ongoing investigation into conduct underlying the second conspiracy, it still bears a sufficient connection for two reasons.  It is conduct by the new conspirators who formed the second, post-indictment conspiracy, to obstruct the investigation of Case No. 06-40068, and it is conduct that violated the terms of Miller's conditions of release.  Accordingly, Count 7 does bear a logical relationship to the overall conspiracy and the other Counts in the Indictment.

**Motions for Bill of Particulars (Docs. 132, 136, 139, 173, 175)**

"'The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to allow him to prepare his defense.'"[39]  "A bill of particulars is not necessary if 'the indictment sets forth the elements of the offense charged and sufficiently

---

[39]*United States v. Tyler*, 42 F. App'x 186, 190 (10th Cir. 2002) (quoting *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996)).

apprised the defendant of the charges'" against him.[40]  A bill of particulars is not a discovery

device, which can be used to obtain the government's evidence; instead, it's a device used to

obtain the theory of the government's case where the indictment is too vague.[41]  Furthermore,

where the government has provided discovery in abundance, defendants cannot assert that a bill

of particulars is necessary because review of the documents would be copious or burdensome.[42]

   Vanatta alleges that the Indictment is insufficient because it fails to provide him with

adequate notice of the charges.  He contends that Count 1 is lacking because the Indictment

provides that Vanatta and others committed overt acts not limited to those in the Indictment.

This language, Vanatta asserts, suggests that  "other information exists which has not been

provided."  That, however, is not the standard in deciding whether a bill of particulars is

required.  The government is not required to list each overt act in forming the conspiracy.[43]  The

Indictment provides alleged facts that defendants "created and presented to the bank false,

fictitious and fraudulent documentation" to obtain loans.  This fact, along with others, places the

defendant on notice of the charge against him in Count 1.  Vanatta challenges Counts 2 and 3,

claiming that the government did not provide information about what was false on the alleged

tax returns and that the Indictment does not "specify the nature of such information."  As stated

above, a bill of particulars is not a discovery device.  Moreover, the government has provided the

defendants with an abundance of discovery documents which should inform Vanatta of the

---

[40]*United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (quoting *United States v. Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988)).

[41]*Tyler*, 42 F. App'x at 190.

[42]*See Ivy*, 83 F.3d at 1282.

[43]*United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978); *see also United States v. Russo*, 483 F. Supp. 2d 301, 311 (S.D.N.Y. 2007).

14

nature of the alleged false tax returns and the false loan application.  As to Counts 4 and 5, Vanatta claims that because Counts 2 and 3 are insufficient, Counts 4 and 5 are as well. However, this Court decided that Counts 2 and 3 are sufficient, especially because defendants have discovered many underlying documents.

Vanatta argues that in Counts 6, 7, and 8 the government failed to specify how Vanatta knew that "friend letters" and the original sales contracts were a part of a pending investigation, and that the government has not offered any specificity on the nature of the alleged harassment and threatening of the witnesses.  Again, Vanatta is seeking evidence on the issues, simply not a purpose of the bill of particulars.  Finally, Vanatta contends that Counts 9-13 should be dismissed because the other Counts on which 9-13 rely are insufficient.  As detailed above, the earlier Counts are not insufficient, and Counts 9-13, incorporating all previous Counts by reference, are thus detailed with the requisite specificity.

In Miller's motion, he first requests that the government provide more detailed information about the "numerous overt acts" taken in furtherance of the conspiracy.  Again, as with Vanatta's claim, this falls short because the government has provided extensive discovery and is not obligated to provide the defense with a list of all overt acts constituting the offense. Miller also challenges paragraph eleven of the Indictment, which states that "defendants unilaterally increased the sales price on homes before closing, forged buyers' signatures, and caused buyers to obtain 'friend letters.'" As with the following requests, this is essentially a request for discovery.  Miller is seeking identification of those documents which allegedly show the forged signatures and the increased sales prices.  As discovery is in process, if the government has not provided these items, defendant should confer with the government or when

appropriate, file the appropriate discovery motion.

Miller next contends that paragraph twenty does not reveal to him what false and fraudulent pretenses were used by him to defraud the financial institutions and what documents dated July 31, 2006, were used.  Miller is incorrect; the Indictment sets out in diagram format that defendants are alleged to have defrauded First National Bank, Lake Ozark, Missouri.  It also details the means of that alleged fraud; namely, through submitting false tax returns and financial statements and by submitting false loan applications for Kerrie Jordan to obtain proceeds from First Tennessee Bank, Memphis, Tennessee.

In a supplemental request (Doc. 173, 175), Miller seeks information identifying: (1) the home buyers for whom defendants allegedly prepared and submitted false information; (2) the substance of that false information; (3) the documents evidencing that Sparks paid "kick backs;"(4) the buyers to whom Sparks provided funds for down payments; (5) the intended meaning of "inflated sales contract;"and (6) what documents Sparks shredded at Vanatta's request.  To the extent the discovery does not reveal the identity of the home buyers for whom defendants are alleged to have prepared and submitted false information, the Court directs the government to identify these home buyers.  Similarly, if the discovery does not include or identify the documents that provided the "kickbacks," the government is directed to identify these documents.  And, to the extent "inflated sales contract" means something other than an inflated sales price, as referenced in the Indictment, the government is directed to define what is meant by that term.

The government has granted discovery to the defendants.  Most of Miller's requests border on asking the government to organize and detail the documents for the defendants in a

fashion that relieves the defendants of organizing and conducting their own discovery.  To the extent Miller seeks to have the government find each item in discovery for the defendants, the motion is denied.  To the extent, however, Miller is requesting that these discovery items be provided, the motion is granted.

Harris also filed a motion for bill of particulars asserting that Counts 3, 5, and 7 do not allege how Harris was involved in the conspiracy.  In Count 3, it is alleged that defendants defrauded a financial institution by submitting false loan documents.  In paragraph ten it is alleged that defendants "fielded calls and contacts from prospective home-buyers . . . including [maintaining] sales contracts and false rent verification documents, which defendants called 'friend letters.'"  Paragraph twelve explains that Harris was hired to perform various office tasks, inevitably including "fielding" telephone calls from prospective buyers and "maintaining the buyer files for various home sale transactions."  Thus, the Indictment does allege how Harris was involved in the conspiracy as to Count 3.  Count 5 alleges that the proceeds from the Count 3 transaction were used to pay off a debt to Starland's Construction Loan, establishing the connection between Counts 3 and 5, as well as Harris's involvement.  Finally, Count 7 speaks for itself.  The government alleges that defendants engaged in activity to harass and intimidate witnesses.  To the extent the discovery does not provide documentary or testamentary evidence describing acts of harassment, from which one can find or infer an intent to intimidate, the government is directed to identify the acts of harassment as well as direct defendants to circumstantial evidence of an intent to intimidate.  Accordingly, Harris's motion for a bill of particulars is granted as to Count 7 and denied as to Counts 3 and 5.

**Motions for Change of Venue or Intra-district Transfer (Docs. 29, 95)**

Vanatta requests that this case be transferred to the Kansas City division of the District of Kansas for trial because that location is more convenient for defendants and witnesses. He contends that the alleged acts took place in Kansas City, the witnesses are located in Kansas City, and evidence may be found in Kansas City; accordingly, Kansas City is a more convenient venue.

Fed. R. Crim. P. 18 provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice.

"The trial court may weigh the prejudice alleged by defendant against the concern of providing a speedy trial."[44] A district court has discretion in determining whether intra-district transfer is appropriate.[45] Further, a court's decision regarding change of venue is entitled to deference.[46] In the Court's Order of November 21, 2006,[47] this Court denied a motion for intra-district transfer that was based primarily on the same grounds offered here. The Court incorporates by reference that Order and denies Vanatta's motion for the reasons stated therein.

**Motions in Limine (Docs. 135, 138)**

Miller has filed motions seeking to exclude certain background evidence and evidence of wealth. Miller asserts that evidence of his wealth acquired prior to the commencement of the

---

[44]*United States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982) (citing *United States v. Brown*, 535 F.2d 424, 429–30 (8th Cir. 1976); *United States v. Florence*, 456 F.2d 46, 50 (4th Cir. 1972)).

[45]*United States v. Afflerbach*, 754 F.2d 866, 869 (10th Cir. 1985).

[46]*United States v. Williams*, 897 F.2d 1034, 1036 (10th Cir. 1990) (quoting *United States v. Hunter*, 672 F.2d 815, 816 (10th Cir. 1982)).

[47]Doc. 121, *U.S. v. Miller I*, 06-40068-JAR.

alleged crimes is irrelevant.  The Indictment charges Miller with conspiracy commencing in

2004 and concluding in November 2006.  Miller claims that any evidence of his wealth,

including property, planes, and other assets accumulated prior to the alleged time of the

conspiracy is irrelevant because they were not derived from fraud.  The government maintains

that evidence of Miller's wealth is relevant because, when compared to his decline in income

after the indictment, it tends to show that Miller cannot make an "honest dime."  It is also

relevant because Miller's wealth was primarily derived from the criminal conduct and is a result

of years of fraudulent conduct.

   "To be relevant, evidence must make more probable 'the existence of any fact that is of

consequence to the determination of the action.'"[48]  Here, the Court fails to see how evidence of

Miller's wealth prior to the alleged conspiracy is relevant and the government provides no basis

in its response.  The government relies on *United States v. Ewings*[49] and *United States v. Penny*,[50]

for the proposition that evidence of Miller's wealth prior to the alleged conspiracy is relevant.

Those cases, however, do not stand for that proposition.  In *Ewings*, the evidence admitted

against the defendant was evidence of expenditures by him after completing the alleged fraud.

In that case, the evidence was relevant to show that defendant was "solely responsible for the

fraud."[51]  Also, "where the object is financial enrichment, evidence that one has been enriched is

probative of participation in the crime."[52]  Here, unlike *Ewings*, the government seeks

---

[48]*United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991).

[49]936 F.2d 903 (7th Cir. 1991).

[50]60 F.3d 1257 (7th Cir. 1995).

[51]*Ewings*, 936 F.2d at 907.

[52]*Id.* at 906.

19

admissibility of evidence of wealth gained before the alleged conspiracy took place, including expenditures made before the alleged conspiracy date.  As such, without providing grounds on which this evidence is relevant, the evidence will not be admitted.[53]

Miller also moves to prohibit the government from reading the indictment in Case No. 06-40068, as it is not only filled with hearsay, it is largely irrelevant and will unduly prejudice the jury.  But the government is not asking to read that indictment.  Rather, the government is merely asking the Court to take judicial notice of that indictment.  Miller also asserts that if the court were to take judicial notice of the indictment in Case No. 06-40068, he would be prejudiced because once the jury hears the scope of the crimes alleged in that indictment, the jury will not accord him the presumption of innocence in this case.  But taking judicial notice of the indictment does not mean that the indictment will be read to the jury.  Rather, the Court will merely state that an indictment was filed, charging a number of defendants, including Jeffrey Miller (but none of the other defendants in this case).  The Court would further explain that in the course of that case the Court entered an order releasing Jeffrey Miller on a bond, and ordered him to abide by certain conditions of release. [54]

Moreover, the Indictment in Case No. 06-40068 is relevant, as its existence is probative of many of the charges in this case, not only for explaining the context in which the other alleged crimes took place, but for showing the defendants' alleged intent and knowledge of defendant

---

[53]*See Penny*, 60 F.3d at 1263 (explaining that evidence of wealth is admissible if the government provides evidence that the wealth was derived from illegitimate sources and that wealth was acquired during the alleged conspiracy).

[54]Further, as the government proposes, that Order could be admitted into evidence (the court is not prejudging its admissibility in its entirety, particularly since there may be irrelevant and/or prejudicial information in that order that would necessarily be redacted as a condition of admission).

Miller's conditions of release in Case No. 06-40068.  In fact, given that some of the charges in the Indictment in the instant case are based on alleged obstruction, witness intimidation, and criminal contempt by Miller violating the terms of his release order in Case No. 06-40068, evidence about the existence of those pending charges, the affected witnesses, evidence that was allegedly destroyed, as well as the conditions of release that Miller was subject to, is highly probative.  Also probative is evidence of Miller, Vanatta, Irvin, and Harris's knowledge of the witnesses and documentary evidence in that case.  Also, because the Indictment in this case charges Vanatta, Irvin, and Harris with aiding and abetting Miller in violating the conditions of his bond, evidence relevant to their knowledge of the other case, their knowledge of Miller's conditions of release, and their intent to defy the Court's order in Case No. 06-40068 is all relevant.

The Court is mindful that this type of evidence is prejudicial, but when charges are based on alleged contempt, obstruction of justice, and witness intimidation, the probative value of evidence concerning the underlying case surely outweighs its prejudicial effect, as required by Rule 403 of the Federal Rules of Evidence.  Nevertheless, the Court at this writing, fails to see why the indictment in Case No. 06-40068 should be read to the jury in its entirety.  The indictment in Case No. 06-40068 includes 59 counts charging conspiracy, money laundering, and criminal forfeiture based on an alleged scheme of defrauding others of more than twenty-five million dollars.  Indeed, the conspiracy, fraud, and related charges in Case No. 06-40068 sound quite similar to the conspiracy and fraud charges described in the Indictment in this case. The Court will keep this issue under advisement, and conduct a limine hearing shortly before trial.  At that time, the Court will determine the least prejudicial way to allow probative and

relevant evidence underlying the referenced charges in this case.

**Harris's Motion to Dismiss Counts 2, 4, and 7 (Doc. 140)**

Harris claims that Counts 2, 4, and 7 should be dismissed as to her, because she did not work with Miller until February; therefore, the substantive charges alleged in Counts 2 and 4 charging her with bank fraud for transactions occurring on January 23, 2006, and charges of money laundering occurring on February 1, 2006, should be dismissed.  The government responds that Harris's request is premature because whether a defendant is a part of a conspiracy is a question of fact for the jury to determine.  Moreover, there is evidence linking Harris to codefendants in January 2006.  During grand jury proceedings, Harris testified that she may have spoken with Angela Parenza, a defendant in Case No. 06-40068 who has plead guilty to conspiracy, as early as January 2006.  Furthermore, the government argues that Harris's rights can be protected by a Rule 29 motion to dismiss if the evidence does not support her involvement in the conspiracy.

To establish a conspiracy, the government must show that two or more persons agreed to violate the law, that the defendant knew the essential objectives of the conspiracy, that the defendant knowingly and voluntarily became a part of the conspiracy, and that the alleged co-conspirators were interdependent.[55]  Harris is correct that a defendant cannot be criminally liable for substantive acts of the conspiracy prior to joining the conspiracy.[56]  However, whether a

---

[55]*United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007).

[56]*United States v. Glazerman*, 421 F.2d 547, 551 (10th Cir. 1970).

22

person is part of a conspiracy is a question of fact for the jury.[57]  Thus the jury will have to

determine when Harris joined the conspiracy, and in particular, whether she joined the

conspiracy before she began working with the codefendants in February.  Though the Indictment

explains that Harris began working with Miller and company in early February, the government

points to evidence tending to show that Harris may have been involved with the conspiracy

before her official employment.  Thus, Harris's motion to dismiss Counts 2 and 4 is denied.

Harris, alternatively argues that even if she was a part of the conspiracy, Count 7,

charging defendants with harassment of persons in violation 18 U.S.C. §§ 2 and 1512(d)(1),

should be dismissed because Harris was a lowly participant in the conspiracy.  She urges this

Court to adopt her view that the Due Process Clause constrains the application of *Pinkerton*

liability because her involvement in the "substantive offense is slight."  In essence, Harris argues

that the intimidation of the witness was outside the bounds of the conspiracy and that it was not

reasonably foreseeable.  Thus, she should not be labile for the acts of her co-conspirators.

It is axiomatic in conspiracy cases that the government need not show that defendant

directly participated in the commission of each substantive offense.[58]  In some cases, however,

the Due Process Clause may place limitations on the extension of the *Pinkerton* doctrine where

the commission of a certain crime was not in furtherance of the conspiracy.[59]  For example, this

Circuit has "applied *Pinkerton* to find defendants guilty of firearm charges for co-conspirators'

---

[57]*United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (whether a person is part of a conspiracy is a question of fact); *United States v. Sophie*, 900 F.2d 1064, 1080 (10th Cir. 1990) (explaining that whether a conspiracy exists is a question of fact, and to convict a defendant of participating in a conspiracy, the government must show that defendant was in agreement with others to commit the unlawful act).

[58]*United States v. Hernandez*, 509 F.3d 1290, 1295 (10th Cir. 2007).

[59]*United States v. Cherry*, 217 F.3d 811, 817 (10th Cir. 2000) (quoting *United States v. Alvarez*, 755 F.2d 830, 851 n. 27 (11th Cir. 1985)).

use of firearms, [but has] never extended the doctrine to hold co-conspirators liable for first-degree murder that was not the original object of the conspiracy."[60]  Again, Harris's motion depends on questions of fact, her membership and role in the conspiracy, if any, and the objects of the conspiracy.  Accordingly, Harris's motion to dismiss is denied.

**Vanatta's Motion for *James* Hearing (Doc. 133)**

Vanatta seeks a *James* hearing to determine the admissibility or existence of co-conspirator statements the government plans to use at trial.  The government asserts that whether to have a *James* hearing is within the discretion of the Court, and that the Court should forego a *James* hearing and condition the admission of co-conspirator statements on the government's ability to "connect up" the evidence at trial showing that there was in fact a conspiracy.

Before admitting co-conspirator statements, the court must determine by a preponderance of the evidence that a conspiracy existed, the defendant and declarant were both members of the conspiracy, and that the statements were made in the furtherance of the conspiracy.[61]  In the Tenth Circuit, a court can only admit co-conspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a "predicate conspiracy through trial testimony or other evidence."[62]  The preference, however, is for a *James* hearing.[63]  In making its determination, the court may rely upon the actual statements by co-conspirators along with

---

[60]*Id.* (citing *United States v. Wacker*, 72 F.3d 1453, 1464 (10th Cir. 1995), *United States v. Davis*, 1 F.3d 1014, 11017 (10th Cir. 1993)).

[61]*United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995).

[62]*United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting *Owens*, 70 F.3d at 1123).

[63]*Id.*

independent evidence of the conspiracy.[64]  The independent evidence linking the statements to the defendant, however, need not be substantial.[65]  For example, the burden is met by corroborating evidence by an investigator.[66]

At the limine hearing shortly before trial, the Court will hear this motion, and determine at that time whether a *James* hearing is appropriate.  If the government's witnesses and documentary evidence offered early in the order of proof, establish a conspiracy and the defendants' membership in the conspiracy, based largely or at least in part on evidence other than co-conspirator statements, then there will be no need for a *James* hearing.  If, on the other hand, the government will significantly rely on co-conspirator statements to establish the existence and membership of the conspiracy, then the Court will conduct a *James* hearing before trial.

### IT IS THEREFORE ORDERED BY THE COURT THAT:

(1)  Vanatta's Motion to Sever Codefendant Harris (Doc. 131) is **DENIED**;

(2)  Miller's Motion to Sever Codefendant Harris (Doc. 137) is **DENIED**;

(3)  Miller's Motion to Sever Counts 7, 9, 10, 11, and 12 (Doc. 141) is **DENIED**;

(4)  Vanatta's Motion for a Bill of Particulars (Doc. 132) is **DENIED**;

(5)  Miller's Motion and Supplemental Motion for Bill of Particulars (Doc. 136, 173) and Vanatta's Supplemental Motion for Bill of Particulars (Doc. 175) are **GRANTED** to the extent described in this order;

---

[64]*United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

[65]*Id.* (citing *United States v. Rascon*, 8 F.3d 1527, 1541 (10 th Cir. 1993)).

[66]*Id.*; *see also Owens*, 70 F.3d at 1125.

25

(6)  Harris's Motion for Bill of Particulars (Doc. 139) is **GRANTED** as to Count 7 and

**DENIED** as to the Remaining Counts;

(7) Vanatta's Motions for Change of Venue (Docs. 29, 95) are **DENIED**;

(8)  Miller's Motion to Exclude Evidence of Wealth (Doc. 138) is **GRANTED**;

(9)  Miller's Motion to Exclude Background Evidence (Doc. 135) is **TAKEN UNDER**

**ADVISEMENT**;

(10)  Harris's Motion to Dismiss Counts 2, 4, and 7 (Doc. 140) is **DENIED**; and

(11) Vanatta's Motion for a James Hearing (Doc. 133) is **TAKEN UNDER ADVISEMENT.**

> **IT IS SO ORDERED**.

> Dated this 29th day of April 2008.


>   **S/ Julie A. Robinson**
> **Julie A. Robinson**
> **United States District Judge**


Memorandum and Order in *United States v. Miller*, 06-400151-JAR.